## THE NORTH AMERICA. THE W. S. TAYLOR. SCULLY v. ATLANTIC COAST TRANSP. CO.

(District Court, E. D. New York. April 27, 1921.)

Collision ⬤95(1)—Tugs in fault for collision between meeting tows.

A collision between tows meeting at a bend in a narrow ice channel in Buzzard's Bay, each in charge of two tugs, *held* due to the faults of both the leading tugs, which were in control of the movements of their respective tows; one for not giving warning when she stopped the barge in tow at the point of the bend, being unable to get past in time, and the other,

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

which had the right of way, for not stopping when she reached the bend and saw the danger of passing, until the barge could be moved out of the way.

In Admiralty. Suit for collision by Thomas J. Scully against the steam tugs North America and W. S. Taylor, claimed by the Atlantic Coast Transportation Company, with the tugs Scully and Mercury impleaded. Decree against the North America and the Scully, each for half damages.

Foley & Martin, of New York City, for libelant.

Harrington, Bigham & Englar, of New York City, for owner of steam tugs North America and W. S. Taylor.

Burlingham, Veeder, Masten & Fearey, of New York City, for owner of steam tugs Thomas J. Scully and Mercury.

CHATFIELD, District Judge. On the 30th day of January, 1920, the steam tug North America and the steam tug W. S. Taylor were bringing down through the channel from Hog Island to Wing's Neck the Ampere, a large steel coal barge, bound for New York. The North America and the Taylor had, during the day immediately preceding, come from New Bedford, with the Ampere in tow of the North America and other barges in tow of the Taylor. At the Cape Cod Canal, and in the channel in Buzzard's Bay up to the entrance to the canal, so much ice had been encountered that it was necessary to bring the barges through one at a time and for both tugs to assist in the operation. A stop had been made at the mooring dolphins near Hog Island on the forenoon of the 30th, and the North America, when the trip was resumed, went ahead, breaking the ice where necessary, particularly as they approached the bend in the channel at Buoy No. 15. When the North America was not engaged in breaking the ice, she went back and assisted the Taylor in towing the Ampere, by extending a hawser to the Taylor, which in turn had the Ampere on a short hawser to a bitt directly over the stem of the Ampere.

From Hog Island to a point a short distance below, the view of the channel down to Wing's Neck is obstructed by Mashnee Island. As the North America came out from behind this island, shortly after going back and giving the hawser to the Taylor, she observed the tug Scully coming up the channel toward the Cape Code Canal, with two barges, the Congressman Scully and the Francis Scully, in tow, and with the tug Mercury close up behind the second barge to assist in holding the tow straight, or to push the vessels through the ice where that aid was necessary. The tug Scully had the first barge upon a single hawser, extending over the bow to the center bitt. A canal pilot was also on the Scully; but, owing to some discussion as to the advisability of towing with a single hawser, this pilot seems to have taken but a fitful or intermittent part in the actual handling of the boat.

The channel from Hog Island to Buoy No. 15 was broken out to a sufficient width so that the tows could pass with safety. Below Buoy No. 15, the lane through the ice was also broken to a sufficient width so that the boats could easily pass, but immediately around Buoy No.

15, and particularly at the turn opposite that buoy, which is on the west side of the channel, the ice was packed so solidly and the lane through the water was so narrow that the captain of the North America realized that the tows would have difficulty in passing each other, and as the event proved there was not room just at the turn for the boats to squeeze by without breaking further ice on one side or the other.

The captain of the North America and the captain of the Taylor both testify that their tow, including the Ampere, had completely passed around the turn, and were proceeding to starboard close to the unbroken edge of ice in a straight course, with the Ampere then in line behind the Taylor. One of the witnesses from the tug Scully testifies that the Ampere had made the bend at the corner. The captain of the Scully and the captain of the Mercury, on the other hand, testify that the Ampere was either just making the turn at Buoy No. 15, or had not sufficiently rounded the turn so as to be following in a straight course behind the Taylor. In this they are corroborated by the mate of the North America, and from the whole testimony it appears that, when the North America and the Taylor found they could not warp the Ampere around the corner against the heavy packed ice, the Ampere had not proceeded far enough to reach a point where she could pass, in the lane below the bend, the Scully tow, without being in physical contact with the side of the Scully barges.

When the North America stopped, the Taylor immediately stopped her engines, and the Ampere remained fixed in the ice, protruding across the channel in such a position that the tug Scully was barely able to pass between her bow and the solid ice upon the opposite side. The Scully and the Mercury had already made two trips through the channel with the barges of the Scully's tow, and were now bringing up the Mercury's barges from a position in the ice where they had spent the preceding night, near Wing's Neck. After the Scully passed the North America and saw the position of the Ampere, she blew three whistles to the Mercury, to hold back the tow. Prior to this no navigation signal had been given by either boat, as they were each in plain sight, and each on her own side of the channel.

According to the testimony the tide was flood at this point—that is, running toward the Cape Cod Canal—although it was nearing the turn. The captain of the North America had been counting upon having the benefit of the flood tide, which would pull the ice out of the jam at Buoy No. 15, until the turn was reached, and after making the turn he expected to have an ebb tide, which would carry the ice away from Buoy No. 15 into the wider waters of Buzzard's Bay. But at the time of collision the flood tide was still running with the Scully and against the North America.

The Scully, with her single tow line and her square bow, yawed when in contact with the ice, unless held back by the Mercury at the tail of the tow. Until the Mercury reversed, the barge Scully was moving from side to side to some extent; but at the three-whistle signal from the tug Scully, not only did the Mercury stop the headway of the tow, but the tug Scully shifted her towing line from the center bitt to the

port forward bitt of the barge Scully, and pulled the barge close over against the ice on the starboard side of the channel. Then the tug Scully went ahead, passing the Taylor at a distance of less than 25 feet, evidently going much closer to the bow of the Ampere, and, with the tide, proceeding at a fairly rapid rate in spite of the holding back of the Mercury.

Examination of the chart, together with the testimony that the Scully tow was following closely the starboard side of the channel, makes it apparent that as the tug Scully moved around the turn, directly opposite the Ampere, she must have drawn her tow to port, even though the barges were following directly behind the Scully. The ice was packed so tightly that observation of the edge of the lane must have been difficult until the turn was made, and the bow of the Congressman Scully brought up against the stem of the Ampere just as the tug Scully came opposite the stern of the Ampere, while the tug Mercury was then nearly alongside the tug Taylor.

The witnesses are not in agreement as to the exact point where the Ampere and the Scully touched. One of the witnesses testifies definitely that the anchor on the port side of the Ampere caught the port bow of the barge Scully. Another of the witnesses testifies that the corner of the Scully bumped into the bluff of the bow of the Ampere, while several of the witnesses testify that the stem of the Ampere brought up against the bow of the barge Scully a little inside of the port corner. Whether this blow was delivered by the stem of the Ampere or by the fluke of the anchor is comparatively unimportant. The testimony shows that two of the bow planks were broken some 3 or 4 feet from the port corner of the Scully. Several of the witnesses at the trial placed models to illustrate the way in which the boats came in contact, and unless the Ampere was at an angle across the channel it would seem to be difficult to explain how the barge Scully, which is over 100 feet long, could have been so far over to port as to cover one-half the width of the Ampere and the 3 or 4 feet which the injuries on the Scully measured in from the corner (making a total of 31 or 32 feet), as the side of the Scully must at that time have lapped back along the side of the Taylor.

The rule of the Canal Commission, which apparently is respected down through the dredged channel to Wing's Neck, provides that the tow traveling with the tide shall have the right of way, and in fact one of the witnesses testifies that tows are not allowed to pass through the canal proper, except in the direction in which the tide is moving. As this accident happened below the canal, the North America cannot be held responsible for being under way; but evidently the Scully tow, moving with the tide, had the right of way, and this apparently was recognized by the North America, which endeavored, after sighting the Scully tow, to reach the bend at Buoy No. 15 in time to round the bend and get out of the Scully's way. In this they were not successful. The North America, after the collision, dropped the hawser to the Taylor, went back, and began to break out more ice upon the starboard side of the Ampere, in which she was joined by the tug Scully, who came around from the stern of the Ampere, and in this way sufficient room

was given so that the Ampere could be forced over by the Scully barges, which squeezed through by her side and proceeded when the tug Scully resumed the trip.

The Taylor had lost some of the blades of her propeller, and evidently did not get the Ampere in motion before the Scully got its tow started again, nor until the North America was back in a position to tow. No fault whatever has been shown on the part of the barge Congressman Scully for the injuries for which this action has been brought. The libel was filed against the Ampere and the Taylor, which in turn have brought in the tug Scully and the tug Mercury. The libelant is entitled to recover against the tug or tugs which may be held liable for the collision.

So far as the tug Taylor is concerned, everything was done, apparently, which could have been done, both in handling the Ampere and in endeavoring to bring her to a point where the tows could pass in safety. Responsibility for whatever was done by the Ampere rests upon the North America, even though the Ampere was at the time in tow of the Taylor, for the North America had assumed contractual relations in managing the tow, in return for assistance by the Taylor. In a similar way no fault has been shown on the part of the Mercury, which evidently obeyed the signals from the tug Scully, and did nothing contributing to the collision for which it should be held at fault.

The libel and petition, therefore, should be dismissed, in so far as the Taylor and the Mercury are concerned, but without costs. The tug Scully, having the right of way, was not at fault for proceeding with her tow, unless some warning was given from the North America, or unless some situation was indicated of such a nature that it became incumbent upon the Scully to do what she could to avoid collision. The leading tugs were almost on top of each other, when it became apparent that the North America and her tow had stopped, and that the Ampere was obstructing the channel. The tug Scully knew that the barge Scully upon the single hawser was not towing steadily through the ice, and sought to remedy this, and also hold back her tow, by directing the Mercury to reverse. One of the Mercury's lines broke, but was quickly replaced, and the other line held. Apparently the ice was packed so thickly that the exact position of the Ampere was difficult of observation by the Scully until the Ampere stopped; yet the North America blew no alarm signal, and, it would seem, gave up the attempt to pull the Ampere around the bend, leaving her fast in the ice across the channel, upon the assumption that the Scully would also stop, even though the North America should have known that the Scully had the right of way.

Under these circumstances the North America was clearly at fault, and made a mistake in estimating the time which the Ampere would have in rounding the corner, in failing to warn the Scully as danger became probable, and also in desisting from trying to move the Ampere out of danger before collision was inevitable, if according to the captain of the North America the Scully was still some 1,000 feet away when the Ampere stopped, either exactly at or very close to the bend, and where she was obstructing the lane through the ice. This distance

seems altogether impossible, as other witnesses estimate the distance at 25 feet; but the greater the distance, the greater the mistake of the North America.

In open water there would be no question that with the right of way, the Scully should not be held responsible for proceeding. But as she passed the bow of the Ampere, the entire situation must have become apparent; she found it necessary to adopt the desperate move of shifting her hawser, so as to attempt to pull the bow of the Congressman Scully over to starboard. She must have been aware that her own course around the turn and the curved ice boundary of the channel would force her barges much closer to the Ampere than she herself would pass, and there could have been barely room for her to go through. Although proceeding with the tide, it is evident that the ice was packed sufficiently, so that the boats could have been stopped and the Mercury could have held back the Francis Scully from piling up on the Congressman Scully. In the face of all this the Scully started up her engines, and with the tide went ahead into collision. It seems to the court that in this the Scully was at fault, and should bear an equal part with the North America for the damages resulting.

The libelant may have a decree, one-half against the North America and one-half against the tug Scully, while the libel against the Taylor and the petition against the Mercury will be dismissed, without costs.